**Charles B. GODWIN, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 03–5016.**

United States Court of Appeals, Federal Circuit.

Aug. 6, 2003.

Guy J. Ferrante, King & Everhard, P.C., of Springfield, VA, argued for plaintiff-appellant. Of counsel on the brief was Kevin J. Barry, of Chantilly, VA.

Colleen Hanrahan, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, argued for defendant-appellee. With her on the brief were David M. Cohen, Director; and Donald E. Kinner, Assistant Director. Of counsel on the brief were Paul M. Geier, Assistant General Counsel for Litigation; Dale C. Andrews, Deputy Assistant General Counsel for Litigation; and Peter S. Smith, Senior Trial Attorney, U.S. Department of Transportation, Office of the General Counsel, of Washington, DC.

Before MAYER, Chief Judge, GAJARSA, and LINN, Circuit Judges.

GAJARSA, Circuit Judge.

Charles B. Godwin ("Godwin") appeals from a final judgment of the Court of Federal Claims granting the United States ("government's") motion to dismiss Godwin's complaint for failure to state a claim upon which relief can be granted, and denying Godwin's motion for judgment on the administrative record. The Court of Federal Claims held that Godwin's complaint failed to allege that (1) the United States Coast Guard ("Coast Guard") selection board ("Selection Board") that considered Godwin for promotion in late 1993 was illegally constituted, and (2) the absence of the most recent Officer Evaluation Report ("OER") before the Selection Board prejudiced Godwin's non-selection for promotion to lieutenant commander. *Godwin v. United States,* 54 Fed.Cl. 217 (2002). We reverse and remand.

## I. BACKGROUND

Godwin was a Coast Guard lieutenant serving on extended active duty as a Reserve Program Administrator ("RPA"). RPA officers were a category of reserve component officers who served on active duty pursuant to 10 U.S.C. § 265 (1956), which was repealed in 1994. In December of 1993, the Coast Guard convened a board to select officers for promotion to lieutenant commander, among other ranks, for 1994, and RPA captains for active duty continuation. The Selection Board considering Godwin for selection for promotion consisted of seven officers, of which only two were RPA officers. The Selection Board had before it a number of Godwin's previous semiannual OERs, but no OER for the semiannual period of June 1, 1993, to November 30, 1993. The Selection Board ultimately did not recommend Godwin for promotion. Because Godwin had not been selected for promotion to lieutenant commander in the previous year, thus having been passed up two consecutive years for promotion, he was mandatorily separated from the Coast Guard on February 27, 1994. Godwin received an OER covering the time period from June 1, 1993, to February 27, 1994 ("detachment OER").

On June 27 and July 21, 1994, Godwin submitted an application for correction to the Department of Transportation Board for Correction of Military Records ("Corrections Board"), seeking the removal of Godwin's failure of selection for promotion on the ground that an OER for the review period between June 1, 1993, and November 30, 1993, was unavailable when the Selection Board convened in December 1993. Godwin also sought removal of the February 1994 OER from his record. The Corrections Board denied relief on June 29, 1995, finding no error or injustice on the Coast Guard's part regarding Godwin's

failure of selection by the Selection Board. The Corrections Board interpreted the Coast Guard regulations as allowing semiannual evaluations to be delayed as long as the officer received an OER within 92 days of the normally scheduled semiannual OER. Thus, the Corrections Board found permissible the Coast Guard's decision to process an OER for Godwin in February 1994 rather than for the semiannual review period ending November 30, 1993. The Corrections Board subsequently denied reconsideration of its decision.

On August 10, 1994, Godwin submitted another application for correction with the Corrections Board to void his second non-selection, and also asked to be returned to active duty and be awarded back pay and allowances. Godwin claimed that the Selection Board was unfairly constituted because it should have had at least three RPA members per Coast Guard Regulations. On July 21, 1995, the Corrections Board denied Godwin's request, finding that the Coast Guard had reasonably concluded that only two RPA officers were available to serve on the Selection Board. The Corrections Board denied Godwin's request for reconsideration on January 17, 1997.

Godwin appealed both Corrections Board decisions to the Court of Federal Claims, seeking back pay and allowances stemming from his alleged illegal separation from the Coast Guard. Godwin also sought to remove from his record the February 1994 OER as well as his second non-selection and ensuing involuntary separation; constructive credit for service since his separation; and retirement on the date of eligibility thereafter. Complaint ¶ 31. The government moved for dismissal of the complaint for failure to state a claim, and Godwin moved for judgment on the administrative record. On September 10, 2002, the Court of Federal Claims granted the government's motion and denied Godwin's motion. The court first found that the Selection Board was not illegally constituted, notwithstanding that the Board had only two RPA officers rather than the three RPA officers required by the applicable Coast Guard regulation. The court stated that the Coast Guard regulations provide that if a sufficient number of RPA officers is "not available" to serve on the Selection Board, then the Selection Board may consist of not less than one RPA officer, and that the question of an officer's availability is ultimately one left to the Coast Guard's discretion. Next, the court found that the missing OER was not material to Godwin's non-selection for promotion. The court accordingly granted the government's motion to dismiss Godwin's complaint for failure to state a claim upon which relief can be granted and denied Godwin's motion for judgment on the administrative record. Godwin timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

### A. Standard of Review

 We review *de novo* a Court of Federal Claims decision dismissing a complaint for failure to state a claim upon which relief may be granted. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir.2002). In evaluating a motion to dismiss under Court of Federal Claims Rule 12(b)(4),[1] the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Dismissal under Rule 12(b)(4) is appropriate when the court determines that the facts as asserted do not entitle the claimant to a legal remedy. *Boyle v. Unit-*

---

1. Federal Claims Rule 12(b)(4), which paralleled Federal Rule of Civil Procedure 12(b)(6), has since been changed to Federal Claims Rule 12(b)(6).

*ed States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000). The Court of Federal Claims will overturn a Corrections Board decision when it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998) (citing *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824 (1979)).

■ The substance of decisions as to the composition, training, equipping, and control of a military force is frequently "beyond the institutional competence of courts to review." *Lindsay,* 295 F.3d at 1257. For example, we regard judgments made by military officials that a particular officer does not merit promotion as nonjusticiable. *Id.* However, a claim of a procedural violation may be justiciable because " 'the test or standards against which this court measures the military's action are inherent: they are the applicable statutes and regulations.' " *Id.* at 1257–58 (quoting *Adkins v. United States,* 68 F.3d 1317, 1323 (Fed.Cir.1995)).

### B. Legality of the Selection Board

#### 1. Availability of RPAs

We first consider Godwin's argument that the Corrections Board's acceptance of the Coast Guard's determination that only two of the twelve RPA officers eligible to serve on the Selection Board were "available" was arbitrary, capricious, or contrary to law.

Article 14–A–12b of the Coast Guard Personnel Manual states:

*Composition of Boards.* A board convened to consider RPA's for promotion to the next higher grade shall consist of five or more officers who are serving in or above the highest grade to which the board may recommend officers for promotion. *Three of the members shall be RPA's. If a sufficient number of RPA's are not available to satisfy this requirement, Commandant (G–P) may reduce the number of RPA members to not less than one.* In the event no Reserve officer is serving on active duty who is senior to all officers to be considered for promotion, a Reserve officer serving on inactive duty or in a retired status who is senior to all officers to be considered by the board shall be called to active duty and placed on the board.

Article 14–A–12b (first emphasis in original; second emphasis added). Thus, under Article 14–A–12b, if at least three RPA officers are "not available," the Coast Guard is obligated to place at least one RPA officer on the Selection Board.[2]

Godwin's complaint alleges that the Coast Guard determined that ten of the twelve RPA officers on active duty who were eligible to serve on the Selection Board nonetheless were "not available" to select officers for promotion for the following reasons: three officers served on the previous year's RPA Selection Board; one officer was being considered by the captains' continuation board that same year; one officer's record was deemed inadequate for participation; two officers had schedule conflicts; two officers (captains) were "more junior than [the Coast Guard] normally like[s] to have on a board making selections for promotion to captain," as well as classmates of one officer to be considered by the 1994 Board; and one officer was scheduled to retire in the future, and it was the Coast Guard's practice

---

**2.** The RPA officer requirement as to the Selection Board's composition no doubt exists to "minimize the chance that conscious or unconscious bias," *Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984, 994 (1979) (en banc), would operate against RPA officers in the selection process. *Cf. id.* (stating that the Army's failure to include an "appropriate number" of Reserve officers, as required by statute, thwarted the goal of preventing "conscious or unconscious bias" against Reserve officers).

not to use officers who requested separation from active duty. Complaint ¶ 17.

■ On appeal, the government argues that many of these reasons furnished involve judgment calls that the judiciary cannot legally second-guess. The Corrections Board found, and the Court of Federal Claims agreed, that the Coast Guard regulations do not define availability and unavailability, thereby placing such determinations within the discretion of the Coast Guard. The Coast Guard's sphere of discretion, however, does not extend so far that we would ignore those reasons that are inconsistent with the Coast Guard's own regulations. We focus in particular on the Coast Guard's determination that one officer was not available on the ground that the officer was scheduled to retire from active duty in the near future. The Coast Guard defended this reason by explaining that it normally does not use officers who requested separation from active duty. This reason, however, rests uneasily with Article 14–A–12b, which expressly requires a reserve officer who is either retired or on inactive duty to be called back on active duty and placed on the Board in the event that there is no senior reserve officer already serving on active duty on the Board. *See* Article 14–A–12b ("In the event no Reserve officer is serving on active duty who is senior to all officers to be considered for promotion, a Reserve officer serving on inactive duty or in a retired status who is senior to all officers to be considered by the board shall be called to active duty and placed on the board."). The Coast Guard's reason appears to create the curious universe where it may deem soon-to-retire officers "not available" but then, if no other qualified RPA officers are available, require retired or inactive RPA officers to be available to serve on the Board. Taking the facts alleged in Godwin's complaint as true, because the Coast Guard's explanation of unavailability in this regard appears inconsistent with

Article 14–A–12b, we hold that Godwin's allegations establish a *prima facie* case that the Correction Board's decision upholding the Coast Guard's determination that a soon-to-retire RPA officer was "not available" to serve was arbitrary, capricious, or contrary to law. As such, a dismissal is inappropriate at this stage, and we therefore reverse the dismissal of Godwin's complaint and remand for further proceedings on the availability issue.

## 2. *Consolidation*

■ We next address Godwin's arguments that the Selection Board was illegally constituted because (1) the Selection Board that considered Godwin for promotion to lieutenant commander also considered officers for promotion to three grades, all higher than lieutenant commander, and (2) the Selection Board also considered RPA captains for continuation on active duty. Complaint ¶¶ 12, 15, 18.

Here, because the Selection Board was considering other officers for ranks above lieutenant commander, only RPA officers serving in or above the highest rank of those officers under consideration for selection were eligible to serve on the Selection Board. *See* Article 14–A–12b ("A board convened to consider RPA's for promotion to the next higher grade shall consist of five or more officers who are serving in or above the highest grade to which the board may recommend officers for promotion."). Godwin asserts that this practice was illegal because it reduced the number of RPA officers eligible to serve on the Selection Board. We disagree. As Godwin himself acknowledges, Article 14–A–12a expressly gives the Coast Guard the authority to convene either "separate boards for each grade" or one board to "consider officers in more than one grade." The Coast Guard's election to follow the latter path therefore is fully supportable by regulation. Godwin nonetheless con-

tends that the 3–RPA requirement of Article 14–A–12b should limit that which Article 14–A–12a explicitly allows. However, we see no reason why Article 14–A–12b, which concerns the constitution of the Selection Board or Boards after formation, should so limit Article 14–A–12a, which concerns the formation of the Selection Board.

Godwin also takes issue with the Coast Guard's decision to convene one Board to consider both RPA officers for promotion and RPA captains for continuation. However, Godwin cannot show that any statute or regulation is contravened by the Coast Guard's practice in this regard. While Godwin points to Article 14–A–20, which concerns the convening of continuation boards, nothing in this regulation prohibits the Coast Guard from creating a Board that considers both promotion for officers of various ranks and continuation matters for captains.

We recognize the Coast Guard's interest in managing its financial and personnel resources. In light of this interest, and because, even taking his allegations to be true, Godwin fails to identify how the Coast Guard's decision to convene one Board to consider RPA officers of various ranks for promotion as well as RPA captains for continuation violates any established statute or regulation, we hold that Godwin is unable to set forth a *prima facie* case that the formation of the Selection Board was illegal on consolidation grounds.

## C. *Absence of OER*

█ Godwin also contends that his record was "prejudicially incomplete" because the Selection Board did not have before it an OER accounting for the six-month evaluation period ending November 30, 1993. To prevail on this argument, Godwin must show (1) a "legal error," such as a clear violation of a statute or regulation that governs the process by which OERs are compiled and considered, such that the OER controversy at issue is justiciable, *Lindsay*, 295 F.3d at 1258, 1259, and (2) a *prima facie* case of a "substantial connection," or nexus, between the error and the subsequent decision not to promote, *Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173, 175 (1982).[3]

### 1. *Legal Error*

█ We first conclude that there was legal error in the Coast Guard's failure to provide Godwin with an OER for the six-month review period ending November 30, 1993. Article 10–A–3a(1)(a)(2) provides that an OER submission is optional if "[a] regular OER will be submitted within the following 92 days after the scheduled annual/semiannual due date." However, this regulation also notes an exception to this optional OER submission: "those officers in the promotion zones ... shall not delay their regular OER past the scheduled due date." Because Godwin was under consideration for promotion, Godwin was entitled to an OER for the six-month period ending November 30, 1993 pursuant to Article 10–A–3a(1)(a)(2). On appeal, the government concedes as much. However, it does not concede that there was a legal error. We disagree. Godwin never received an OER for the six-month period ending November 30, 1993. While Godwin later received an

---

**3.** In *Porter v. United States*, 163 F.3d 1304, 1323–24 (Fed.Cir.1998), we held that 10 U.S.C. § 628 superceded Court of Claims precedent setting forth this two-part inquiry to the extent that the precedent "required proof of lack of causation in all cases," *Richey v. United States*, 322 F.3d 1317, 1320 (Fed.Cir.

2003). As the Coast Guard is governed by title 14 and not title 10 of the United States Code, *Porter* is inapplicable to this case and therefore does not alter the nexus analysis we apply here. *See also Christian v. United States*, 337 F.3d 1338 (Fed.Cir.2003).

OER for the period spanning June 1, 1993, to February 27, 1994, when his detachment from the Coast Guard occurred, this detachment OER does not take the place of the OER to which he was legally entitled. Therefore, we conclude the Coast Guard legally erred in not providing Godwin with an OER for the semiannual period ending November 30, 1993.

### 2. Nexus

■ To withstand a motion to dismiss, it is Godwin's burden to allege a prima facie case of a nexus between the missing OER for the semiannual period ending November 30, 1993 and the ultimate decision of his non-selection for promotion. Due to the fact-intensive nature of the nexus inquiry, dismissal for failure to state a claim "is appropriate only where the claimant's allegations cannot under any circumstance establish that the errors substantially affected the decision to separate claimant from the service." *Lindsay,* 295 F.3d at 1261. Indeed, to withstand a dismissal, a claimant only need provide "enough of a factual predicate to direct further inquiry into the nexus between the error or injustice and its adverse consequences." *Id.*

■ We thus turn to the question of whether Godwin's complaint sufficiently pled a *prima facie* case of nexus. It is undisputed that OERs are an important component of the officer's record when officers are evaluated by a Selection Board. *See* Article 10–A–1a(1) (stating that one of the purposes of the Officer Evaluation System is to "provide information upon which important personnel management decisions regarding individual officers can be based. *Especially significant among these are promotions* and assignments." (emphasis added)). All of the officer's prior OERs, taken together, comprise an important part of the ultimate decision to select or nonselect an officer for promotion. Article 10–A–1d(1)(a) ("The cumulative file of officer performance evaluations provides one of the bases for selection of the best qualified officers from among those eligible."). However, among all prior OERs, the *most recent* assessment of the officer's performance is particularly informative as to the officer's current capabilities and future potential. Thus, if an officer is due an OER, and the Selection Board should have had but did not have this most recent OER before it when considering a candidate for selection for promotion, the Selection Board does not have access to what is one of the most probative indicia of the officer's abilities, and the evaluation of that candidate could very well be prejudiced by the absence of that OER. Given these considerations, we hold that where a claimant alleges that the OER providing the most recent assessment of the claimant's abilities should have been but was not before the Selection Board, this is sufficient to plead a prima facie case that there is a nexus between the absence of the OER before that Board and the non-selection for promotion.

To withstand dismissal as to the nexus prong, therefore, Godwin need only allege that he was entitled to the most recent OER before consideration by the Selection Board, and this OER should have been before the Selection Board but was not, thereby prejudicing his evaluation before the Selection Board. Drawing all reasonable inferences in Godwin's favor, we read Godwin's complaint to allege that he never received an OER for that time, that no such OER was but should have been before the Selection Board when it met in mid-December 1993, and that the absence of this OER prejudiced his evaluation by the Selection Board because the Selection Board considered an incomplete record. Complaint ¶¶ 21, 24, 30. Godwin thus has alleged "enough of a factual predicate to direct further inquiry into the nexus between the error or injustice and its ad-

verse consequences." *Lindsay*, 295 F.3d at 1261.

We emphasize that, in this procedural posture, our evaluation of whether Godwin has stated a claim is based on the facts as alleged in Godwin's complaint. *See Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001) (noting that in a Fed. Cl. R. 12(b)(4) context, the claimant's claim "turns on the adequacy of its pleading"). Thus, at this stage, we have no occasion to consider the Coast Guard's various arguments on the nexus issue, which would be more properly raised in, for example, a summary judgment motion. Such arguments include: (1) the detachment OER evaluating Godwin from June 1, 1993, until February 27, 1994, was "significantly weaker than the immediately previous four OERs" and "would not have enhanced applicant's chances" for promotion; (2) the decision not to select Godwin for promotion was based on six years of OERs showing "average" performance by Godwin; and (3) two officers promoted lacked November 1993 OERs while two officers not promoted did have November 1993 OERs, thus rendering the presence of a November 1993 OER "not determinative for promotion or non-selection." We also do not consider relevant at this point the arguments that Godwin was responsible to submit preliminary paperwork for the OER by November 9, 1993, but did not do so until December 2, 1993, thereby making his submission twenty-three days late; and that this OER would not have been in Godwin's record by December 13, 1993, when the Selection Board met, because an OER must traverse multiple officers in the chain of command for it to be finally placed in the officer's record for evaluation. We do not speculate as to how these considerations factor into the ultimate outcome of this case. In this procedural posture, we conclude only that Godwin has sufficiently pled a *prima facie* case of nexus. Whether Godwin will ultimately prevail is a matter for remand.

## III. CONCLUSION

We affirm the Court of Federal Claims's denial of judgment for Godwin on the present record. However, Godwin has pled a prima facie case that (1) the Corrections Board's acceptance of the Coast Guard's explanation that a soon-to-retire RPA officer was not "available" to serve on the Selection Board was arbitrary, capricious, or contrary to law, and (2) the absence of the most recent semiannual OER materially prejudiced his non-selection for promotion by the Selection Board. The dismissal of Godwin's complaint for failure to state a claim is accordingly

*REVERSED AND REMANDED.*