**Commander Timothy R. QUINTON, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 04–192 C.

United States Court of Federal Claims.

Feb. 8, 2005.

Eugene R. Fidell, Feldesman Tucker Leifer Fidell LLP, Washington, D.C. for plaintiff. Matthew S. Freedus, Feldesman Tucker Leifer Fidell LLP, Washington, D.C., of counsel.

Douglas K. Mickle, Trial Attorney, James M. Kinsella, Deputy Director, David M. Cohen, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Lt. Commander Michele Bouzaine, United States Coast Guard, Office of Claims and Litigation, Washington, D.C., of counsel.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

This case is before the Court on defendant's Motion to Dismiss, or in the Alternative, for Judgment on the Administrative Record and plaintiff's Cross–Motion for Judgment on the Administrative Record. Oral argument was held on January 14, 2005. For the reasons set forth below, defendant's Motion to Dismiss, or in the Alternative, for Judgment on the Administrative Record is GRANTED in part and DENIED in part and plaintiff's Cross–Motion for Judgment on the Administrative Record is GRANTED in part and DENIED in part.

### BACKGROUND

The following facts are undisputed, unless otherwise noted. Plaintiff is a retired regular Commander in the Coast Guard. He is currently serving on active duty pursuant to a voluntary recall. Administrative Record ("AR") at 180. He retired on June 30, 2000, AR at 197, 199, 209, having failed of selection

---

**1.** In 1995, the Board's official name was the Board for Correction of Military Records of the Coast Guard. The Board has also been called the Department of Transportation Board for Correction of Military Records. Currently, the Board is the Department of Homeland Security Board for Correction of Military Records.

for promotion to Captain in 1998 and 1999, AR at 155–61.

Promotions to Captain in the Coast Guard are made on a "best qualified" basis. 14 U.S.C. § 259(a) (2000); id. at § 260(b). Making promotion decisions on a "best qualified" basis requires a comparison of the service records of all the eligible officers. Coast Guard Personnel Manual ("PM") art. 14.-A.1.c. Best-qualified selection boards are required to consider all officers impartially and equally; to apply the same criteria to all; and to evaluate officers by comparison. Id. art. 14.A.6.b.1.

In 1995, the Board for Correction of Military Records[1] ("BCMR" or "Board") ordered that an Officer Evaluation Report ("OER") from 1991 be removed from Commander Quinton's personnel record, as well as three failures of selection for promotion to Commander. The Board further ordered that the 1991 OER be replaced by an OER "for continuity purposes only." AR at 6. Almost immediately thereafter, Commander Quinton was selected for promotion to Commander and given the appropriate back date of rank, October 1, 1993. AR at 179. By letter dated August 16, 1995, Coast Guard Headquarters advised him that his service record had been corrected in accordance with the decision of the Board, and that the 1991 OER in question had been removed from his record on July 24, 1995. AR at 192–193. The letter also contained a copy of the "continuity OER." Id.

Because of his retroactive date of rank as a Commander, plaintiff soon came up for promotion to Captain. The overall promotion rate at the 1999 selection board was 66%. For officers who had previously been considered, the promotion rate was 25%. AR at 159–60. The service records presented to the selection boards were not segregated between above– and in-zone officers.[2] AR at 143. The promotion board did not know who was above or in the zone. Id. Plaintiff failed

---

**2.** An officer is considered "above the zone" for promotion to a higher grade if that officer has previously been considered for and failed of selection to that grade.

to be selected in 1998 and 1999. AR at 180. Since he was twice non-selected for promotion to Captain, Commander Quinton had to retire when he reached twenty years of active service on June 30, 2000. 14 U.S.C. § 285(a) (2000).

During the interval between the BCMR's 1995 decision and his retirement, Commander Quinton served as Coast Guard Liaison Officer at U.S. Naval Base, San Diego, California, and then as Coast Guard Liaison Officer to the Commander, Naval Surface Reserve Force, New Orleans, Louisiana. AR at 180. His final assignment was as Executive Officer ("XO") of USCGC *Midgett*, a 378–foot, high endurance cutter home ported in Seattle, Washington. *Id.* He was decorated at each of those assignments, culminating in receipt of the Meritorious Service Medal (with Operational Distinguishing Device) for his service aboard the *Midgett. Id.*

Commander Quinton was recalled to active duty, with his consent, on October 20, 2002. *Id.* Since that time he has been serving as Coast Guard Liaison Officer to the Chief of Naval Operations' Expeditionary Warfare Branch. *Id.* Retired Coast Guard Officers who are voluntarily recalled to active duty after having twice failed of selection for promotion to the next higher grade are not eligible for promotion. PM art. 5.A.8.a.3.

On January 14, 2003, Commander Quinton had occasion to examine his service record at Coast Guard Headquarters. AR at 180. Upon reviewing his record, he noticed that the 1991 OER that was ordered removed was present in his electronic record. *Id.*

On January 21, 2003, Commander Quinton filed a second application with the BCMR, arguing that in light of the BCMR's earlier decision concerning the 1991 OER, he was entitled to relief as a result of the failure to implement that decision unless the Coast Guard could show that he would have been passed over for Captain in any event. AR at 176, 181. Commander Quinton requested that the BCMR set aside his failures of selection for promotion to Captain in 1998 and 1999 as well as his mandatory retirement. AR at 181–84. Plaintiff further requested reinstatement to active duty retroactive to June 30, 2000, with back pay and allowances,

subject to appropriate offsets. *Id.* Lastly, Commander Quinton requested that he be given two additional opportunities to compete for promotion to Captain, and if selected upon the first or second such opportunity, that his date of rank be adjusted to the date he would have had if he had been selected by either the 1998 or 1999 Captain selection boards, respectively. *Id.*

Even though it had consented to relief in the 1995 case, AR at 16, 18, the Coast Guard opposed Commander Quinton's 2003 BCMR application, AR at 159–61. The BCMR determined that the Coast Guard had not fully implemented the Board's 1995 Order. AR at 118. Specifically, the Board found that, although the Coast Guard had removed the 1991 OER from Commander Quinton's paper record, the OER had not been removed from his electronic record. *Id.* Therefore, the Board determined that the promotion year ("PY") 1998 Captain Selection Board, which the Board concluded had reviewed only paper records, did not see the 1991 OER, and thus the Coast Guard committed no error as to the 1998 Captain Selection Board. *Id.* The Board did find, however, that because the Coast Guard failed to remove the 1991 OER from Quinton's electronic record, the 1999 Captain Selection Board saw the OER. Thus, Commander Quinton's nonselection for promotion by the PY 1999 Captain Selection Board required additional review. AR at 119. Upon such additional review, the BCMR denied Commander Quinton's application for relief, finding that it was unlikely he would have been promoted even if the 1991 OER had not been in his electronic record. AR at 119–20.

On February 11, 2004, Commander Quinton filed an action in this Court requesting, among other things, that the decision of the BCMR be set aside.

## DISCUSSION

### I. Jurisdiction

Jurisdiction is undisputed by the parties. The court's subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491, extends to "any claim against the United States founded either upon the Constitution,

or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). The case at bar is an action for United States Coast Guard active duty pay and allowances in accordance with 37 U.S.C. § 204.

## II. Standard for Motion to Dismiss

Dismissal under United States Court of Federal Claims Rule ("RCFC") 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy. *N.Y. Life Ins. Co. v. United States*, 190 F.3d 1372, 1377 (Fed.Cir.1999). In reviewing a motion to dismiss, the court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998). The case may be properly dismissed if plaintiff "can prove no set of facts in support of his claim that would entitle him to relief." *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1131 (Fed.Cir. 1998); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000). RCFC 12(b)(6) specifically instructs, however, that where such a motion is filed and "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by RCFC 56." RCFC 12(b); *see also Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed.Cir.2000); *Singleton v. United States*, 54 Fed.Cl. 689, 691 (2002).

## III. Justiciability

■ The existence of jurisdiction does not confirm the court's ability to adjudicate a dispute. In addition to jurisdiction, a dispute must be justiciable; it must be within the competency of the court. *Murphy v. United States*, 993 F.2d 871, 872 (Fed.Cir.1993). "Justiciability is distinct from jurisdiction; it depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for

the right asserted can be judicially molded.' " *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). "Justiciability is a particularly apt inquiry when one seeks review of military activities." *Id.*

The Government moved to dismiss on the ground that Commander Quinton's challenge to the decision of the BCMR is not justiciable, arguing that the decision whether to promote an officer in the Armed Services, as well as the method by which those decisions are made, implicate highly discretionary questions of military judgment and expertise which civilian courts may not second guess. Gov't Mot. at 5 (citing *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed.Cir.2004); *Murphy*, 993 F.2d at 872–74; *Sargisson v. United States*, 913 F.2d 918, 921–22 (Fed.Cir. 1990) ("A court lacks the special expertise needed to review ... officers' records and rank them on the basis of relative merit."); *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.1988)). Indeed, the Court of Appeals for the Federal Circuit has recognized that:

[b]ecause 'decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments,' *Gilligan v. Morgan*, 413 U.S. 1, 10[, 93 S.Ct. 2440, 37 L.Ed.2d 407] (1973), the substance of such decisions, like many other judgments committed to the discretion of government officials, is frequently beyond the institutional competence of courts to review. *Voge*, 844 F.2d at 780. Judgments made by military officials or administrative bodies that a particular officer does not merit promotion or retention fall into this category, and courts will refuse on jurisprudential grounds to review such decisions, even if the court has jurisdiction to do so. Based on this principle, neither the Court of Federal Claims nor this court will review those specific conclusions of military review boards that speak to the question of whether an officer deserved to be promoted or retained in service. Such unreviewable determinations include a conclusion that removal of a defective OER would not have made any difference to an officer's prospects for retention on active duty in the reserves, *Sargisson v. United States*, 913 F.2d 918, 922

(Fed.Cir.1990), or prospects for promotion. *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed.Cir.2000).

*Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir.2002). The Government further contends that in order for a claim for records correction to be justiciable, there must be tests and standards the court could apply to determine whether the officer would have been released or promoted even on the court's version of the record. *Id.* at 1257–58. Absent such standards, the Government contends that the matter is non-justiciable.

The Government relies heavily on the Federal Circuit's decision in *Fluellen*, 225 F.3d 1298. Fluellen had appealed a failure of promotion to the Air Force BCMR ("AFBCMR"). *Id.* at 1300. The AFBCMR concluded that, even if the OER at issue was improperly considered, the removal of this one OER from the record would not have affected Fluellen's prospects for promotion. *Id.* at 1304. The trial court determined that the conclusion of the AFBCMR was supported by substantial evidence. *Id.* The Federal Circuit, however, stated that "[a] claim of error in a promotion decision presents a nonjusticiable controversy because there are no statutory or regulatory standards against which a court can review such a decision; it related to a matter left to the discretion of the military." *Id. Fluellen* also reiterates the notion that the court lacks the expertise to analyze the relative merit of military officers. *Id.*

Despite the above pronouncements of the Federal Circuit, the Supreme Court has stated that "[b]oard decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (citing *Grieg v. United States*, 226 Ct.Cl. 258, 640 F.2d 1261 (1981); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 812 (1979)). Case law in this Circuit has also recognized the court's ability to review Board decisions. *See Godwin v. United States*, 338 F.3d 1374, 1379 (Fed.Cir.2003); *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.1986); *Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173 (1982).

In *Godwin,* a retired Coast Guard lieutenant brought suit against the United States, appealing an adverse decision of the Department of Transportation BCMR, and alleging, among other things, that his failure of selection was improper because the Coast Guard failed to include a recent OER in his personnel file before the selection board. 338 F.3d at 1377. In addressing Godwin's claim regarding the absent OER, the Federal Circuit stated that "[t]o prevail on this argument, Godwin must show (1) a 'legal error,' such as a clear violation of a statute or regulation that governs the process by which OERs are compiled and considered, *such that the OER controversy at issue is justiciable.*" *Id.* at 1380 (citing *Lindsay,* 295 F.3d at 1258, 1259) (emphasis added). Thus, in order to be justiciable, plaintiff must show only that there was a legal error regarding the manner in which OERs are compiled and considered. As discussed *infra* at 9, with respect to the 1999 Selection Board, the Coast Guard conceded and the BCMR acknowledged that inclusion of the 1991 OER was a legal error. AR at 112.

In *Wronke v. Marsh,* the Federal Circuit found justiciable a claim by a discharged Army Reserve Officer challenging discharge. 787 F.2d 1569. In that case, the court stated as follows: "Under the precedent in this court, Wronke was bound by the ABCMR's determination that he was unsuitable, unless he established that that determination was arbitrary, capricious, contrary to law, or unsupported by substantial evidence, and unless he did so by 'cogent and clearly convincing evidence.'" *Id.* at 1576 (internal citations omitted).

Likewise, in *Engels, see infra* at 124–25, the Court of Claims treated an appeal of a BCMR decision as a justiciable issue. 230 Ct.Cl. 465, 678 F.2d 173. *Engels* involved an Air Force captain who had been passed over for promotion to major. 230 Ct.Cl. at 466, 678 F.2d at 174. He brought an action challenging the passovers and his resulting discharge, seeking reinstatement to active duty, back pay, and deletion of two OERs from his record. *Id.* The AFBCMR found that even with the corrected record, there was no basis for promoting plaintiff to major, or for set-

ting aside his passovers. 230 Ct.Cl. at 467, 678 F.2d at 175. The Court of Claims reviewed the merits of the AFBCMR's decision, and found in favor of plaintiff.

At issue in the case at bar is not whether Commander Quinton should have been or should be promoted. Rather, the question is whether the decision of the BCMR, a civilian board, was "arbitrary, capricious or not based on substantial evidence." *Chappell*, 462 U.S. at 303, 103 S.Ct. 2362. Far from being the type of decision about which the "court lacks the special expertise needed," *Sargisson*, 913 F.2d at 922, the court frequently reviews administrative decisions under an arbitrary and capricious standard. Accordingly, defendant's Motion to Dismiss on the ground that Commander Quinton's claim is non-justiciable is denied.

## IV. Standard for Motion for Judgment on the Administrative Record

In a records review case like Commander Quinton's claim for military pay, the Court reviews the Coast Guard's decision pursuant to RCFC 56.1. "[J]udicial review in military pay cases is normally limited to the administrative record developed before the military board." *Bateson v. United States*, 48 Fed.Cl. 162, 164 (2000) (citing *Long v. United States*, 12 Cl.Ct. 174, 177 (1987)). RCFC 56.1 provides for judgment on the administrative record, a procedural tool unique to the Court of Federal Claims. *Banknote Corp. of America v. United States*, 365 F.3d 1345, 1352 (Fed. Cir.2004). "Rule 56.1(a) specifies that a motion for judgment on the administrative record shall be treated in accordance with the rules governing motions for summary judgment, with the exception that any supplementation of the administrative record shall be by stipulation or by court order only." *Id.* "Thus, judgment on the administrative record is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.;* RCFC 56(c); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## V. Standard of Review of Decision by the BCMR

■ When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Chappell*, 462 U.S. at 303, 103 S.Ct. 2362. Commander Quinton bears the burden of demonstrating the impropriety of the Board's decision by " 'cogent and clearly convincing evidence.' " *Wronke*, 787 F.2d at 1576 (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)). Plaintiff must also overcome the presumption that military officers, like other public officials, discharge their duties correctly, lawfully, and in good faith. *Hoffman v. United States*, 894 F.2d 380, 385 (Fed.Cir.1990).

This standard of review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed.Cir.1983). Thus, because the Court of Federal Claims does not sit as a "super correction board," *Skinner v. United States*, 219 Ct.Cl. 322, 330–31, 594 F.2d 824, 829–30 (1979), where reasonable minds might reach different conclusions upon the evidence, the Court of Federal Claims will not substitute its judgment for that of the board. *Wronke*, 787 F.2d at 1576.

## VI. The *Engels* Test

■ "Officers claiming in this court that they have been improperly selected out, after passovers, must first show that the service committed a legal error (or perhaps a serious injustice)." *Engels*, 230 Ct.Cl. at 467, 678 F.2d at 175 [3]. The more difficult question is the relationship between the legal error and

---

**3.** In *Porter v. United States*, 163 F.3d 1304, 1323–24 (Fed.Cir.1998), the court held that 10 U.S.C. § 628 superceded Court of Claims precedent setting forth the two-part inquiry in *Engels* to the extent that the precedent "required proof of lack of causation in all cases." *Godwin*, 338 F.3d at

1380 n. 3 (citing *Richey v. United States*, 322 F.3d 1317, 1320 (Fed.Cir.2003)). As the Coast Guard is governed by title 14 and not title 10 of the United States Code, *Porter* is inapplicable to this case and therefore does not alter the nexus analysis we apply here. *Id.*

plaintiff's passover, *i.e.,* the issue of nexus, connection, and prejudice. *Engels,* 230 Ct. Cl. at 470, 678 F.2d at 176. In *Engels,* the court set forth "two separate but interrelated standards: First, was the claimant's record prejudiced by the errors in the sense that the record appears worse than it would in the absence of the errors? Second, even if there was some such prejudice, is it unlikely that he would have been promoted in any event?" *Id.* "To hold the passover void, the court need not find that the officer would in fact have actually been promoted in the absence of the error, but merely that promotion was not definitely unlikely or excluded." 230 Ct. Cl. at 468, 678 F.2d at 175.

On the issue of existence of the error, the burdens of going forward and of persuasion lie squarely with the plaintiff. *Id.* Regarding the causal nexus, plaintiff, to prevail, must make at least a prima facie showing of a substantial connection between the error and the passover. *Id.* But the end-burden of persuasion falls to the Government to show harmlessness—that, despite the plaintiff's prima facie case, there was no substantial nexus or connection. *Engels,* 230 Ct.Cl. at 468, 678 F.2d at 175. The reasons for this division of the burden of proof are twofold. "First, when nexus is considered, plaintiff has already established the existence of the Government's error; second, the defendant, with its far greater knowledge of the facts, statistics, and operations of the promotion selection process, is in much better position to produce evidence and materials showing the lack of adequate nexus in spite of the claimant's prima facie case." *Id.,* 230 Ct.Cl. at 468–69, 678 F.2d at 175.

**VII. The Court Upholds the Decision of the BCMR That There Was No Legal Error Regarding the 1998 Captain Selection Board**

■ Commander Quinton asserts that his personnel record that was reviewed by the 1998 Captain Selection Board contained an OER that should have been removed from his records. Compl. ¶¶ 23, 24. In reviewing

Commander Quinton's application, however, the BCMR concluded that the Coast Guard committed no error with respect to the 1998 Captain Selection Board. The BCMR specifically determined that Commander Quinton failed to meet his burden of establishing that the 1998 Captain Selection Board considered the erroneous OER. AR at 118. The board was not persuaded by Commander Quinton's unsupported assertion that since the erroneous OER was in his electronic record when he reviewed it 2003, and the Coast Guard admitted that it was in his electronic record in 1999, it must have been in his paper record that was presented to the selection board in 1998.[4] *Id.* The Board instead determined that the paper record provided to the selection board contained only the "continuity OER," and not the erroneous OER. *Id.*

The records used by the selection boards are routinely destroyed after the board adjourns, so as to protect the privacy of the officers being considered for promotion. Commander Quinton has never contended that he reviewed his personnel file prior to the 1998 Captain Selection Board. Thus, there is no concrete proof regarding the exact record considered by the 1998 Selection Board.

The Board justifiably relied on the fact that the Coast Guard acted to correct the applicant's paper record in accordance with the BCMR order in Docket No. 95–55, as reflected in its August 16, 1995 letter to Commander Quinton. AR at 118, 192. The fact that Commander Quinton was subsequently selected by the PY 1996 Commander Selection Board, immediately after this correction was effectuated, and was selected for assignment as the XO of a high endurance cutter in the spring of 1998, serve as further evidence that the 1991 OER was removed from his paper record, and thus, not presented to the PY 1998 Captain Selection Board. AR at 110.

The decision of the BCMR regarding the 1998 Selection Board was neither arbitrary nor capricious and was supported by substantial evidence. Plaintiff has failed to es-

---

**4.** It is beyond dispute that the PY 1998 Captain Selection Board used only paper records. AR at 158, 162.

tablish the existence of a legal error regarding the 1998 Captain Selection Board. To that extent, plaintiff's Cross-Motion for Judgment on the Administrative Record is denied and defendant's Motion for Judgment on the Administrative Record is granted.

## VIII. The Decision of the BCMR Regarding the 1999 Promotion Board Must Be Set Aside

### A. Legal Error and Prejudice

■ While the 1998 Selection Board used paper records, the 1999 Selection Board reviewed electronic records. In addressing Commander Quinton's allegations regarding the 1999 Selection Board, the BCMR first stated the following: "The Coast Guard concedes, and the Board finds, that it committed an error by failing to remove the erroneous OER from the applicant's electronic record as required by the BCMR order in Docket No. 95–55." AR at 119. The Board then proceeded to apply the nexus prong of the *Engels* test. *Id.* The Board analyzed whether plaintiff's record appeared worse than it would in the absence of the error. *Id.* In so doing, the Board concluded that the applicant's record would "look only marginally better." *Id.* The Board reasoned that "the erroneous OER was not a derogatory report and had no marks lower than 4. However it had more 4s than the two OERs immediately preceeding [sic] it and the immediate subsequent OER." *Id.* After a comparison of plaintiff's scores on various blocks of the OER, the BCMR recognized that "if a mark-by-mark comparison is made, the 13 4s on the erroneous OER certainly lowered the average overall score for the subject OER ... when compared with the average overall score for the two proceeding OERs ... and the subsequent OER." AR at 119–20.

### B. The BCMR's Analysis Regarding Whether Commander Quinton Would Have Been Promoted In Any Event Was Arbitrary, Capricious, and Not Supported By Substantial Evidence

Having found some prejudice, although marginal, the Board was required to determine whether it was unlikely that Commander Quinton would have been promoted in any event. AR at 119–20; *Engels,* 230 Ct.Cl. at 471, 678 F.2d at 176. It is this part of the Board's analysis that is arbitrary, capricious, and not supported by substantial evidence. The Board's decision is internally inconsistent and not supported by the administrative record.

### 1. *The BCMR Did Not Analyze the Relative Merit of Commander Quinton as Compared to Other Officers*

In its final decision, the Board restated the Coast Guard's comparison of Commander Quinton to the seven of 28 above-the-zone officers who were selected for promotion by the 1999 Captain Selection Board, AR at 112–14, and plaintiff's objections to that comparison, AR at 115–17. The Government has conceded that because selection to Captain is determined on a "best qualified" basis, the Coast Guard must present to the Board a comparison between Quinton and other officers who were considered for promotion in order to determine whether it was unlikely that Commander Quinton would have been promoted even if the 1991 OER had not been in his record. Transcript of Proceedings, Quinton v. United States, 04–192C at 10–11, 45–46, 58 (Fed.Cl. Jan. 14, 2005) ("Tr."). Despite its inclusion of the Coast Guard's comparative analysis, however, the Board itself does not rely on that information in forming its opinion. AR at 118–21. The five numbered paragraphs in the Findings and Conclusions section that deal with the likelihood that plaintiff would have been promoted discuss only Commander Quinton's records, and do not compare him with other officers considered for promotion in 1999. *Id.*

It is not enough, in determining that plaintiff was not likely to have been promoted, to comment only on his record. Without comparing an officer to the other contestants, no reasonable mind can say how any particular individual would fare in a competition in which not everyone can prevail. *Engels,* 678 F.2d at 178 n. 13 ("Defendant has produced no comparative data of the type presented in *Hary* and some other cases. That type of data, which allows the court to tell how many officers were ahead of the plaintiff for pro-

motion with and without the corrections made to his record, is helpful in determining comparative position, and therefore, the critical issue of whether the error was harmless."). Mere assumptions as to why Commander Quinton may have been passed over, or why he would have been passed over in any event, do not suffice.

Additionally, to the extent that the Board relied on the Coast Guard's comparison, that comparison was flawed. The Coast Guard compared Quinton to seven of the 28 above-the-zone officers who were promoted by the 1999 Selection Board, allegedly because these officers were "most similarly situated" to Commander Quinton. AR at 143. As discussed, however, the Selection Board did not know who was above the zone and in the zone. *Id.* Thus, a comparison to only the above-the-zone officers was improper. Also, other than being above the zone, it is unclear how the officers selected for comparison were "similarly situated" to plaintiff. Furthermore, the Coast Guard's assertions as to why those seven officers would have been promoted ahead of Quinton in any event, *i.e.,* they had post-graduate degrees and command experience, are not supported by the record. While some of the seven officers had a post-graduate degree and/or command experience, not all of them did, and the absence of such qualifications was not prohibitive to promotion.

2. *The BCMR Arbitrarily Relied on the Fact that Commander Quinton Was Above the Zone When He Was Being Considered By the 1999 Selection Board*

The Board stated as one of its bases for decision the fact that "[Commander Quinton's] selection opportunity was already reduced because of his failure before the 1998 board, which did not consider the erroneous OER." AR at 120. The Coast Guard and the BCMR rely heavily on the fact that the overall selection rate was 66%, with "only" a 25% rate of selection of officers above the zone. AR at 120–21. First, as aptly stated by counsel for plaintiff at oral argument:

Well the Coast Guard or the government has taken the position here that it's like

finding a hole in space, like launching a satellite to be selected for captain in the U.S. Coast Guard. Extraordinarily competitive.... but when the selection rates are 62 percent or 66 percent or even 25 percent, that's not like lightning striking.

Tr. at 49. Second, reliance on a previous failure of selection for determining that it is unlikely that an applicant would have been selected in any event was addressed and rejected by the court in *Engels:*

Defendant cites, in support of [its] argument, statistics which show that on each subsequent selection the percentage of officers promoted from the same original group goes down. These statistics are true but not at all decisive. The simple and more informative fact is that, in most instances, some officers are selected for promotion who were not selected on earlier occasions. The officers may have improved their records, as did Engels, in the intervening period.... It is plain that the selection boards are willing to promote some officers whose records did not warrant promotion at the earlier time.

678 F.2d at 179. This reasoning is equally applicable to the case at bar, because the record reflects that Commander Quinton's OER dated March 31, 1999, which was presented to the 1999 Selection Board, was excellent and an improvement over the most recent OER considered by the 1998 Selection Board. AR at 120, 212–214 (3/31/99 OER), 216–218 (3/29/98 OER); *see infra* at 129–30.

3. *The BCMR Arbitrarily Minimized the Impact of the 1991 OER*

Article 14–A of the PM sets forth the manner in which promotions to Captain are accomplished. AR at 117. Article 14–A–4d states, "[a] board must consider an officer's entire record; however, the following is considered [the] most significant portion of the record evaluated: ... Captain ... seven years of immediate service or all service in present grade, whichever is greater." AR at 117–18.

The Board relied on this regulation for the conclusion that even if the 1991 OER had been removed, Commander Quinton would

not have been promoted: "The applicant failed of selection in 1999 and the reporting period for the erroneous OER ended on June 26, 1991, falling outside of the seven-year period the Personnel Manual considers the most significant. Therefore the erroneous OER should not have carried as much weight before the 1999 Captain selection board as the more recent OERs." AR at 120. Certainly, the most recent OERs carried more weight than the 1991 OER. The Board, however, minimized the part of the regulation that states "a board *must* consider an officer's entire record." PM art. 14–A–4d; AR at 120 (emphasis added). The Board's decision indicates that because the OER was more than seven years old, it was barely relevant. Furthermore, the Board assumed that because the regulations state that the last seven years are the most significant, the Selection Board abided by that determination. The record, however, belies that assumption.

The Government correctly noted that plaintiff must overcome the presumption that military officers, like other public officials, discharge their duties correctly, lawfully, and in good faith. *Hoffman v. United States,* 894 F.2d 380, 385 (Fed.Cir.1990). Here, the record demonstrates that the Coast Guard itself did not consider OERs beyond the seven-year period to be "off limits" or inconsequential. AR at 113, 160. In its advisory opinion, the Coast Guard opposed Commander Quinton's request for relief, in part because:

> None of the seven selected had any expressly negative comments written in the comment blocks of their OERs. In contrast, the Applicant received the following comment in block # 7(a) from his reporting officer in his 1989 OER, "... I was disappointed that several projects/duties were not completed (i.e., Annex India update, OPTAR reconciliation) prior to his departure."

AR at 160. The Board reiterated that opinion in its final decision, AR at 113, and restated plaintiff's objection to the Coast Guard's reliance on the 1989 OER. AR at 116. The Board did not state whether it relied on the 1989 OER in reaching its conclusions.

But regardless of whether the BCMR actually based its decision on the 1989 OER, the fact that the Coast Guard relied on it to bolster its position that Commander Quinton would not have been promoted in any event, demonstrates that the fact that the 1991 OER was outside the seven-year period is irrelevant. The Coast Guard and the selection boards must consider an officer's entire record, and in fact, have done so with regard to Commander Quinton. It was arbitrary and capricious for the Board to state that the 1991 OER did not have much impact because of its age, while the record demonstrated that at least with regard to Commander Quinton, the Coast Guard did not deem older OERs insignificant or beyond the purview of the selection board. If the Coast Guard argued that one negative comment in a 1989 OER was severely detrimental to Commander Quinton's chances for promotion in 1999, surely the lower average score on his 1991 OER would likewise be equally damaging.

4. *The BCMR's Decision is Inconsistent Regarding the Result of Having Marks of 4 on an OER*

The decision of the Board is peppered with numbers. The Board counted all the 4s that Commander Quinton received during a given time period, calculated the overall average score on his CDR OERs, and recited the scores that he received in block 12, entitled "comparison scale and distribution" on each report. AR at 110–11, 119, 120. The Board then manipulated these numbers and applied them in an arbitrary and capricious manner.

First, the Board stated that the 1991 OER was not particularly harmful because "the erroneous OER was not a derogatory report and had no marks lower than 4." AR at 119. This statement appears to suggest that the Board considered a score of 4 to be good and not prejudicial to a candidate's chances for promotion. On the next page, however, the BCMR stated the following: "On the four CDR OERs considered by the 1999 selection board, the applicant received a 4, an average mark, in human relations/workplace environment in all but the last OER. The selection board may well have had concerns about the applicant's ability to carry out the Comman-

dant's human relations policies." AR at 120. That statement indicates that if an officer receives a mark of 4, it means that his superior officer had concerns about his ability to carry out that particular task. Such concern would certainly be considered problematic, yet earlier, with regard to the 1991 OER, the Board indicated that a report with 13 4s "was not derogatory." AR at 119.

While plaintiff, in earlier proceedings, acknowledged that 4s may not be "career enhancing," AR at 38, they are not bad scores. In fact, the PM states that a mark of 4 is indicative of a "high level of performance." *See* PM art. 10.A.1.c.2.c. Additionally, even on OERs where Commander Quinton received one or two 4s, he was still highly recommended for command and promotion. *See, e.g.,* AR at 220–22 (Despite Quinton's receipt of a 4 in human relations, rater stated, "[Quinton] has my highest recommendation for command afloat and ashore, and for accelerated promotion to Captain at the earliest opportunity."). Obviously, the raters did not see a 4 as prohibitive to promotion.

The Board was inconsistent in its treatment of 4s. In some instances 4s were acceptable marks and not a barrier to promotion. Other times, however, 4s were fatal to Commander Quinton's prospects for promotion. In this case, such inconsistency rendered the analysis of the Board arbitrary and capricious.

### 5. The BCMR Arbitrarily and Capriciously Downplayed the 1999 OER

The most recent evaluation before the 1999 Selection Board was the OER dated March 31, 1999. In that OER, Commander Quinton received all 5s, 6s, 7s, and in box 9, "comparison scale," he received a 6, which signifies that the officer is "strongly recommended for accelerated promotion." AR at 212–14. The Federal Circuit has recognized that "among all prior OERs, the *most recent* assessment of the officer's performance is particularly informative as to the officer's current capabilities and future potential." *Godwin,* 338 F.3d at 1381.

Focusing solely on a comparison of numbers between Commander Quinton's 1999 OER and his previous OERs, the Board dismissed the significance of the most recent OER with comments such as: "Again while the marks increased on the last OER that was considered by the 1999 selection board, an improving trend of performance was not established by the higher marks on this one OER," and "[w]hile the applicant received a 5 in workplace environment on the last OER before the 1999 selection board, he had not established a trend of improving performance in this area." AR at 120. Despite the pronouncement that there was no improving trend, the record indicates that after having received consistent marks of 4 in human relations, Commander Quinton had improved and achieved a mark of 5.

In downplaying the 1999 OER, the Board ignored the rater's comments on the report. In fact, this flaw is present throughout the Board's decision. The Board simply compared numbers without looking at what those numbers represent. With the exception of noting the one negative comment in the 1989 OER, the Board did not mention the written comments at all. The OERs provide substantial space for reviewer comments, likely because the 1–7 scale is insufficient on its own to capture the full range of a serviceman's accomplishments. By focusing solely on the numbers, the Board ignored a vital facet of the evaluation process. The court has recognized the importance of narrative evaluations. In *Engels,* plaintiff challenged the failure to include in his record a glowing letter of evaluation. 230 Ct.Cl. at 474, 678 F.2d at 178–79. The court stated that "[t]he information in the OER forms is cold and, for the most part, nonevaluative. The same facts acquire a much more significant shine in the words of [an evaluator]." 230 Ct.Cl. at 474, 678 F.2d at 179.

Despite the fact that the Board was not impressed with the numbers, which were an improvement over the previous OER, the description of Commander Quinton in the 1999 OER is impressive. The rater described plaintiff and his work as follows:

> masterfully coordinated several complex personnel transfers; using resources to best advantage; remarkably effective in all aspects of OPS & admin; among the best shiphandlers I've known in over 30 years

of CG service; my "go to" person for difficult evolutions and advice; exceptionally patient; expertly handled complex single shaft moorings at fuel pier in Dutch Hrb & night; keen grasp of all aspects & teaching methods; took lead to keep morale up; exceptional operational, personal, and administrative skills have benefitted this cutter immensely; consistently sound, fair, logical; outstanding sounding board; well liked by all; performed in a consistently outstanding manner in one of the most demanding jobs in today's CG; a driving force; exceptionally skilled seaman; inspiring leader; dedicated to the USCG.

AR at 212–214. To the extent the Board was concerned about Commander Quinton's previous human relations scores and his ability to use resources, those concerns should have been mitigated by a careful consideration of the written comments in the 1999 OER. Instead, the Board ignored all of those comments, downplayed Commander Quinton's accomplishments in that billet, and treated the 1999 OER as almost an anomaly. The 1999 OER was an improvement over the previous OER, and the record does not support the Board's contention that such improvement was a one-time, fluke event. The record demonstrates that the 1999 OER was consistent with Commander Quinton's high standards of performance.

As a whole, the Board's determination that it is unlikely that Commander Quinton would have been promoted in any event was arbitrary, capricious, and not supported by substantial evidence. While the decision whether to promote Commander Quinton to Captain does not lie with this Court, the record demonstrates that he is entitled to have the promotion board consider an accurate version of his record. Defendant's Motion for Judgment on the Administrative Record is denied, and Plaintiff's Cross–Motion for Judgment on the Administrative Record is granted with respect to the Board's decision regarding Commander Quinton's 1999 failure of selection.

## C. Remedy

Plaintiff has requested the relief set forth below, pursuant to 28 U.S.C. § 1491(a)(2) (2000), and defendant, at oral argument, conceded that if the Court found for plaintiff on the merits, such relief would be proper. Tr. at 21–24. Accordingly, the Court ORDERS as follows:

1) the decision of the BCMR shall be set aside with regard to the 1999 failure of selection;

2) Commander Quinton's name shall be removed from the retired list and he shall be restored to the Active Duty Promotion List *nunc pro tunc*;

3) his record shall be corrected by expunging all references to his 1999 failure of selection for promotion to Captain, retirement and recall to active duty from retired status; and

4) Commander Quinton shall be awarded the active duty pay and allowances he would have received had he not been mandatorily retired, less lawful offsets.

### CONCLUSION

Defendant's Motion to Dismiss, or in the Alternative, for Judgment on the Administrative Record is GRANTED in part and DENIED in part. Plaintiff's Cross–Motion for Judgment on the Administrative Record is also GRANTED in part and DENIED in part. The clerk is directed to enter judgment for plaintiff in accordance with Section VIII.C above, entitled "Remedy."

IT IS SO ORDERED.