Shirley J. HOLT, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

No. 00–571C.

United States Court of Federal Claims.

Feb. 18, 2005.

Karen M. Lockwood, with whom was Eric Andreas, Washington, D.C., for Plaintiff.

Christian J. Moran, with whom were James M. Kinsella, David M. Cohen, and Peter D. Keisler, Department of Justice, Washington, D.C., for Defendant.

Lieutenant Commander Holiday Hanna, Lieutenant Commander A.A. Rodriguez–Feo, Department of the Navy, and Scott Lafferty, Defense Finance and Accounting Service, Of Counsel.

John M. Bergen, Law Clerk.

## OPINION

BASKIR, Judge.

Plaintiff, Shirley Holt, claims survivor benefits associated with her deceased former husband's military retirement. Plaintiff alleges that she is the legitimate beneficiary of annuities authorized by the Survivor Benefit Plan (SBP), 10 U.S.C. §§ 1447–1455 (2005). Invoking our jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), she requests that we order the correction of Mr. Holt's Naval records to reflect her entitlement to these benefits.

The Defendant moved, in the alternative, for a dismissal for failure to state a claim upon which relief can be granted, under RCFC 12(b)(4) (now under amended Rules, RCFC 12(b)(6)), and for judgment on the administrative record, under RCFC 56.1. Plaintiff filed a cross-motion for summary judgment. Because we conclude that Mrs. Holt has satisfied the requirements for SBP entitlement—specifically, that she made a "written request"—we conclude that she is entitled to judgment as a matter of law.

### BACKGROUND

Mrs. Holt seeks a death annuity paid under the SBP, 10 U.S.C. §§ 1447–1455, following the demise of her former husband, a veteran of the U.S. Navy. The following facts are either contained in the administrative record or are otherwise not disputed by either party.

In 1956 Plaintiff married William A. Holt, who was then serving on active duty in the United States Navy. In October 1962, after 22 years of military service, Mr. Holt retired as a Chief Petty Officer. In 1973, he elected

to participate in the SBP (Mr. Holt had initially declined to participate in the SBP's predecessor program, the Retired Serviceman's Family Protection Plan.) The SBP is a retirement program for military veterans administered by the Defense Finance and Accounting Service (DFAS). Drawing voluntary deductions from the service member's retirement pay, the SBP pays a monthly annuity to eligible beneficiaries. Mr. Holt's dependents were automatically enrolled pursuant to 10 U.S.C. § 1448(a)(2)(A)—(a)(3). Notwithstanding this automatic enrollment, Mr. Holt specifically designated Plaintiff, his wife and only dependent, as his intended beneficiary.

In 1992, after nearly 37 years of marriage, the Holts were divorced. The divorce decree, issued December 18, 1992, by the Circuit Court for Escambia County, Florida, Family Law Division, provides:

> The parties agree that the Wife would be entitled to fourteen percent (14%) of the Husband's military retirement. The Husband has agreed to, and shall maintain, a survivor's death benefit payment to protect the Wife's entitlement to said retirement.

Final Judgment of Dissolution of Marriage; Administrative Record (AR) I at 13–18.

On March 26, 1993, the Circuit Court for Escambia County issued an amended divorce decree, continuing Mr. Holt's obligation to pay Mrs. Holt 14% of his military retirement pay and directing that a copy of the Amended Divorce Decree be served on DFAS. Amended Final Judgment of Dissolution of Marriage; AR I at 21. It ordered that the payments from the retirement be made by allotment. *Id.* Finally, the Court clarified the SBP obligation in the following manner:

> For so long as she lives, Husband shall maintain Wife as sole beneficiary of the Survivor Benefit Plan presently in effect as part of the Husband's military retirement benefits and shall cooperate with Wife in executing any and all documents necessary and helpful to ensure her receipt of her share of the military retirement and coverage under the Survivor Benefit Plan as his former spouse.

Amended Final Judgment of Dissolution of Marriage ¶ 2(B)(viii); *Id.* at 22.

This annuity program specifically permits such an arrangement in cases where the SBP participant and his beneficiary divorce. Should the service member or retiree desire to maintain a survivorship benefit for his former spouse, he must make the appropriate election within one year of the date of divorce. 10 U.S.C. § 1448(b)(3)(A)(i)-(iii). Here, Mr. Holt failed to take the formal steps necessary to ensure Plaintiff remained a beneficiary under the plan.

Apparently, this oversight is all too common in cases of divorced annuitants. The statute authorizing the SBP has thus been amended to allow the former spouse to unilaterally ensure his or her beneficiary status through a process known as a "deemed election." Essentially, with appropriate documents establishing his or her right to payment of the benefit, the former spouse may initiate continued SBP coverage directly with the military service without the concurrence or cooperation of the retiree. The DFAS will deem an election to have been made on the divorced participant's behalf where, as in this case, the divorce decree requires that the military servicemember or retiree maintain the former spouse as a beneficiary.

However, the onus is on the beneficiary to drive this procedure. The amendment provides that the servicemember shall be deemed to have made such an election if the Secretary concerned receives the following:

(i) Request from former spouse.—*A written request, in such manner as the Secretary shall prescribe,* from the former spouse concerned requesting that such an election be deemed to have been made.

(ii) Copy of court order or other official statement.—

(I) a copy of the court order, regular on its face, which requires such election or incorporates, ratifies, or approves the written agreement of such person; or

(II) a statement from the clerk of the court (or other appropriate official) that such agreement has been filed with the court in accordance with applicable State law.

10 U.S.C. § 1450(f)(3)(A) (emphasis added). As with the election by the military service member, the deemed election request must be received within one year of the date of divorce. 10 U.S.C. § 1450(f)(3)(C). This case turns on the import of the first element, the request itself.

There is nothing in the record to suggest that Plaintiff knew about this provision. Nor is there any documentary evidence that the personnel administering Mr. Holt's retirement benefits advised Plaintiff of the deemed election procedure, at least not during the eligibility year. Not until it was too late did DFAS specifically inform Plaintiff or her attorney that an independent "written request" was required in order to establish her as a deemed beneficiary.

The DFAS record reflects that following the issuance of the amended divorce decree, Plaintiff several times inquired into the status of the entitlements referenced in the instrument. In addition, Plaintiff's divorce attorney, Mr. Gordon Edward Welch, sent an official copy of the divorce decree via certified mail to DFAS on April 23, 1993. During the preliminary stages of this litigation, the Government was unable to locate this document and other records DFAS maintains concerning Mr. Holt's pay and benefits. The Government has stipulated that DFAS received a copy of the divorce decree in April 1993. *See* Tr. of Status Conf. (Feb. 4, 2003) at 10–11. Based on the stipulation, we shall assume for purposes of this motion that the agency was on notice of the divorce proceedings and Shirley Holt's valid legal claim to Mr. Holt's SBP payments. At a minimum, Mrs. Holt satisfied the element required to establish entitlement—submission of the authorizing divorce decree. The Government does not claim it was not on notice of Mrs. Holt's entitlement to SBP benefits.

It is also evident that DFAS did, in fact, treat Plaintiff as the beneficiary for some time, even after the divorce. From the outset of the case, Plaintiff sought to supplement the administrative record with pay vouchers pertaining to Mr. Holt's retired pay in order to establish that DFAS had taken deductions from her former husband's pay and that those deductions ceased at a certain point in time. Neither Plaintiff nor Defendant could say with any certainty when the payments stopped. Mrs. Holt could only confirm that the deductions were made for calendar year 1992. The only available record for this period, a retirement account statement dated March 4, 1993, however, shows no amounts deducted for the SBP.

Because DFAS does not have records for this period, we again arrived at a stipulation. Plaintiff proposed that we treat January 1, 1994, as the date DFAS stopped taking deductions from Mr. Holt's pay. Defendant was willing to stipulate to that date for purposes of these motions. *See* Tr. of Status Conf. (Feb. 4, 2003) at 18–20. In fact, it is quite possible the deductions did stop at that point because that date falls immediately after the one-year anniversary of the Holt divorce, and the end of the 12–month period in which either one of them could have elected former spouse coverage under the statute.

Of particular consequence are the circumstances attendant to Mrs. Holt's actions in securing her rights. Here the factual record is once again murky, partly because Plaintiff and her attorney, Mr. Welch, focused initially on enforcing other more immediate aspects of the divorce decree, not simply the annuity. For example on June 16, 1993, Mrs. Holt's attorney sent the following to DFAS:

> Enclosed please find a Request for Former Spouse Payments from Retired Pay Form and a certified copy of the Final Judgment of Dissolution of Marriage directing the U.S. Navy, pursuant to Uniformed Services Former Spouses Protection Act, to pay directly to Shirley Jean Holt, 14% of the disposable military pay of Mr. Holt. I am requesting by this letter, that this deduction begin immediately.

AR I at 30. This request was honored by DFAS. Pursuant to the cited Act, the agency began sending monthly payments of $350 to the Plaintiff on November 1, 1993.

One cannot fault Mr. Welch for his diligence in securing for his client the settlement's forced share of Mr. Holt's retired pay. At this point in time, Mr. Holt was alive and apparently well, and drawing a paycheck from the Navy, a portion of which was due Plaintiff. The status of Mr. Holt's survivor's

benefits, by contrast, may have seemed less pressing. But we know now that it was indeed pressing, subject as it was to a one-year window for the election for former spouse beneficiary status. As the individual primarily responsible for protecting Mrs. Holt's rights to the annuity, Mr. Welch failed totally.

Not only did Mrs. Holt submit in a timely manner in April 1993, a copy of her divorce decree providing for her beneficiary status under the SBP, but she may have submitted the decree as many as three times during the one-year window for deemed election under the statute. Yet it is Defendant's firm stance that the divorce decree, alone, was not sufficient to secure Plaintiff's SBP entitlement. There is no conjunction connecting the written request and the court order provisions of the statute so as to make clear that there are two requirements. However, the Government has directed us to Department of Defense (DoD) financial management regulations that suggest both elements are needed. We address those regulations in the Discussion below.

Mrs. Holt asserts she was led to believe that she had done all that was necessary to secure all her entitlements. And her belief is corroborated by the record. Indeed, in two letters from DFAS, dated October 13 and October 26, 1993, the agency indicated that "all requirements [had] been met." The reassurances appear to be in connection with her entitlement to retired pay, and not her SBP entitlement. But the letters refer to the "alimony," and it is by no means clear what Mrs. Holt understood by that term. She may have been referring to her entitlement to payments after Mr. Holt's death as well as while he was alive. This layperson's understanding of the term "alimony" is, of course, only supposition. But it is buttressed by an email message within the administrative record that indicates a paralegal at DFAS handling the FSPA claim had forwarded the divorce decree to the SBP "shop" with instructions to review the SBP benefits as well. AR II at 38. This transaction occurred within the one-year period following Plaintiff's divorce from Mr. Holt and appears to have followed a phone conversation with

Mrs. Holt. We shall have more to say about this later.

According to the Complaint, Mr. Holt terminated Plaintiff's beneficiary status in March 1994, in violation of the terms of his divorce. It is not clear from the record that he took affirmative actions to exclude Plaintiff. But after remarrying on April 23, 1994, without complying with the requirement to maintain Plaintiff as his SBP designee, Mr. Holt ensured the same result. On May 24, 1994, he furnished DFAS with a copy of a marriage certificate showing that he had been remarried to Hilda Holt a year prior. Hilda Holt thus became Mr. Holt's spouse beneficiary one year after their marriage. This happened automatically because Mr. Holt had neither cancelled SBP coverage for his spouse nor elected a former spouse beneficiary, and because, purportedly, Plaintiff had not made a successful deemed election after the divorce. 10 U.S.C. § 1447(7)(A), (9).

Correspondence in the administrative record suggests that Plaintiff learned that Hilda Holt had been substituted as the SBP beneficiary only after she was prompted in October 1994 to make a specific inquiry to DFAS concerning her SBP status. It is during this time frame that Mr. Holt apparently failed to make monthly alimony and military retirement payments, necessitating intervention by the Florida courts. Letter of Mr. Gordon Welch to Director, DFAS (Sept. 5, 1996); AR I at 61. Upon learning that the SBP had not been maintained for his client as required by the decree, Mr. Welch contacted Mr. Holt and urged him to reinstate Plaintiff's beneficiary status in compliance with the divorce settlement. According to the attorney, Mr. Holt agreed to take the necessary steps to restore Plaintiff's benefits. However, Mr. Holt died before he could follow through on his promise.

Not trusting her former husband's resolve to change the beneficiary, Plaintiff embarked on a parallel but equally unsuccessful course. After much communication with the agency, Mrs. Holt was finally furnished a DD Form 1882, Survivor Benefit Election Change, which she was urged to execute, and did, on December 22, 1994. However, the election

was ineffective because the one-year window for deemed beneficiary status had closed in December 1993, almost exactly a year earlier. As we read the statute, not even Mr. Holt could have effected the election at that point.

Just five days later, on December 27, 1994, having never taken steps to clear up the beneficiary issue, Mr. Holt died, an apparent suicide. Mrs. Hilda Holt then applied for, and receives to this day, the $424 monthly annuity payment to which Mrs. Shirley Holt believes she is entitled. AR II at 91–93.

Thus, despite numerous contacts with DFAS prior to the close of the statutory period, Plaintiff's beneficiary status was now apparently foreclosed. DFAS could do nothing to aid her. All subsequent requests on behalf of Mrs. Holt—whether formal demands by her attorney or Congressional inquiries by her representatives Senator John McCain, Senator Jon Kyl and Congressman J.D. Heyworth—resulted in the same response: DFAS has no authority to alter the SBP after the one-year window for deemed former spouse election. The only available recourse she was told is an application to the Department of the Navy Board for Correction of Naval Records (BCNR or Board).

Based on this directive, on August 27, 1997, Plaintiff petitioned the BCNR. However, the Board declined to even consider her case. On February 18, 1998, the Navy advised Plaintiff:

We have reviewed your Application for Correction of Naval record (DD Form 149).

Unfortunately, there is nothing the Board can do for you in this situation. Former spouses are not eligible petitioners before the Board. As stated in title 10, U.S.Code, section 1552, "No corrective action may be taken under subsection (a) unless the claimant or his heir or legal representative files a request."

Your only recourse to enforce your divorce decree appears to be to *pursue your claim in the Federal courts.*

We regret the circumstances are such that a more favorable determination cannot be made.

Pl. Suppl. App. at 20 (emphasis added.)

Through Congressional inquiries, Plaintiff sought further review of the Board's decision, and the Board then clarified its rationale. Apparently, it is not just that Plaintiff is a former spouse that renders her ineligible to petition the Board, but rather that her claim could have a detrimental impact on the surviving spouse, Hilda Holt, who is the only remaining proper claimant before the Board. Letter of W. Dean Pfeifer, Dept. of Navy, to Sen. Jon Kyl (Jul. 18, 2000). Having thus been referred to every level of this bureaucratic regime, Mrs. Holt ended up at the doorstep of the U.S. Court of Federal Claims, filing a *pro se* Complaint on September 25, 2000.

### *PROCEDURAL HISTORY*

(1.) *Procedural Posture:*

In her amended Complaint, dated September 15, 2003, Plaintiff seeks several remedies from this Court, including a judgment declaring her entitlement to the SBP benefits. She also requests that we correct her husband's military records to reflect that Mr. Holt made a valid election for Plaintiff to remain as the beneficiary of his SBP, and thereby void Mr. Holt's 1993 SBP election for Hilda Holt. In damages, Plaintiff seeks back annuity payments from the date of Mr. Holt's death to the present, as well as future monthly SBP payments from this day forward.

The Defendant moved, in the alternative, for dismissal for failure to state a claim upon which relief can be granted, and for judgment upon the administrative record, pursuant to RCFC 12(b)(6) and RCFC 56.1, respectively. Plaintiff filed a cross motion for summary judgment. However, the Defendant's motions do not accurately describe the procedural posture of this dispute.

First, there is no basis for a motion to dismiss for failure to state a claim upon which relief may be granted. This is a military pay case, in which the entitlement to statutory benefits is at issue. The question of

entitlement to those benefits is a merits question, and clearly survives a RCFC 12(b)(6) motion.

We are also not reviewing the decision of the BCNR. Although that is typically the route traveled before a military pay claim comes before this Court, the Board's review is not a mandatory precondition to filing suit. *See, Martinez v. United States,* 333 F.3d 1295 (Fed.Cir.2003) (en banc). The Board declined Mrs. Holt's petition because she was not a qualified applicant. While Mrs. Holt challenges the Board's jurisdictional rejection, she also seeks substantive relief. Moreover, the record before us is not in the strict sense an "administrative record" which we review under the Administrative Procedures Act "arbitrary and capricious" standard. 5 U.S.C. § 706(2)(A). In fact, the Government has filed a record in two parts—the record associated with the petition before the BCNR (A.R. vol. I) and the admittedly incomplete record maintained by DFAS (A.R. vol. II)—which explains some of the anomalies we encountered upon reviewing the documents. In that respect, a RCFC 56.1 motion is inapplicable.

Instead, we have before us a pure Rule 56 motion. Summary judgment, if appropriate, is based on stipulated facts consisting of the Board's "record," including all the correspondence and internal agency (Navy, DFAS, or otherwise) documentation of this claim, and facts stipulated by the parties. Although the BCNR cannot choose between claimants in the rather unique circumstances attendant here, we are advised that the Navy will implement the Court's decision if it is favorable to Shirley Holt.

*(2.) Supplemental Briefing:*

After hearing oral argument on the initial briefs with Mrs. Holt representing herself, we became convinced that neither the Court, nor the Plaintiff, nor even the Government, understood the proper procedure for making a deemed election by a former spouse. To our surprise, there was also very little authority concerning the particulars of the former spouse's "written request" for deemed election beneficiary status. Although the Defendant pointed to earlier cases in the Court that enforced this requirement literally, as requiring an instrument separate and distinct from the submission of the divorce documentation, we desired further edification. Accordingly, we issued the following direction:

We are not convinced, at this point, that the two statutory "requirements" are mutually exclusive. Similarly, the "wrong form" defense may turn out not to be too persuasive. Apparently, even DFAS was using the wrong form, or at least an outdated one. For when Mrs. Holt finally went through the formal written request process, after the time period for doing so had elapsed, she was furnished DD Form 1882. AR I at 31. Nowhere on the form do the words "deemed election" appear. Nor can we conclude that this was the manner in which the Secretary prescribed the statutory provision be implemented—the purported deemed election form called for the signature of the retiree.

The Government indicated that it would provide more official guidance on the procedural requirements for former spouse elections, including any regulations implementing the statute. In addition to the regulations, we would like to review the forms used by DFAS or any other agency in ensuring former spouse beneficiary coverage, both the forms in use during the pertinent time period, January 1993—January 1994, and those in use now. In particular, we wish to know the provenance of Form 1882, how long it has been used, and for what purposes, and when—if at all—it has been withdrawn from use and by what direction.

Finally, the parties shall file supplemental briefs addressing these items in the context of the statutory provisions governing SBP entitlement. 10 U.S.C. § 1450(f)(3)(A)(i) and (ii).

Order (Dec. 19, 2003).

The Plaintiff had to date done a commendable job dealing with this matter in a *pro se* capacity. The Court was able to secure her *pro bono* representation, so that these issues might be treated in a supplemental round of briefing. The Plaintiff's new submission raised three arguments: (1) the "written re-

quest" provision of the SBP was not binding upon Plaintiff because the Secretary of Defense had not yet prescribed the manner the request should take; (2) the BCNR acted arbitrarily and capriciously in rejecting Mrs. Holt's petition; and (3) the one-year period in which Plaintiff had to submit a deemed election should be equitably tolled. Counsel's papers were extremely helpful in clarifying the issues in this case.

At the conclusion of supplemental briefing, we established a date for oral argument on the supplemental briefs. At that point, the Government for the first time indicated that it deemed Mrs. Hilda Holt an interested third party, under RCFC 14(b). Accordingly, Defendant sought leave under the Rule to properly notify Mrs. Hilda Holt of the pending action and provide her 42 days in which to respond. All pertinent filings were successfully served upon Mrs. Hilda Holt, but neither the Government nor the Court has heard from her, or any counsel on her behalf. Oral argument was again scheduled, but unfortunately, counsel of record for Plaintiff was unable to attend on this date. The case was ultimately heard on January 13, 2005.

## DISCUSSION

### (1.) Issue Presented

The central issue in this case is whether Plaintiff has met the statutory prerequisites for making a "deemed election" as a former spouse for beneficiary status under the SBP. Those requirements, once again, are repeated verbatim as set forth by 10 U.S.C. § 1450(f)(3)(A)(i) and (ii). In order to obtain beneficiary status the Secretary of the Navy must receive:

(i) Request from former spouse.—A written request, in such manner as the Secretary shall prescribe, from the former spouse concerned requesting that such an election be deemed to have been made.

(ii) Copy of court order or other official statement.—

(I) a copy of the court order, regular on its face, which requires such election or incorporates, ratifies, or approves the written agreement of such person; or

(II) a statement from the clerk of the court (or other appropriate official) that such agreement has been filed with the court in accordance with applicable State law.

*Id.*

As we have noted, there is no conjunction between clause (i) and clause (ii). The drafter has separated the two elements with a period, not a semi-colon, leaving us to wonder whether they are multiple requirements joined by the conjunction "and" or whether they are joined by the conjunction "or," so that one or the other will suffice. *See Jama v. Immigration and Customs Enforcement*, — U.S. ——, ——, 125 S.Ct. 694, 701, 160 L.Ed.2d 708 (2005) (In interpreting statutory requirements for removal of alien, Supreme Court observed "[e]ach Clause is distinct and ends with a period, strongly suggesting that each may be understood completely without reading any further.") By contrast, the two sub-parts of the second clause relating to documentary proof of entitlement—(I) a court order, and (II) a statement from the clerk—are separated by a semi-colon and the alternative "or."

This raises the question: Are two separate and distinct documents always required, or can there be circumstances in which satisfaction of one part may suffice? For instance, are the statutory prerequisites met where the former spouse provides the court order required in subparagraph (ii), but where someone else provides on her behalf the written request required by subsection (i). As another possibility, in the absence of Secretarial guidance, can the "written request" requirement be satisfied when all the facts and circumstances leave no doubt that the former spouse wishes to secure entitlement under the SBP? In other words, can there be "substantial compliance" by means of the functional equivalent of a "written request?"

We must decide whether the Government's insistence on formality in its demand for a distinct and separable "written request" is justified in the absence of any established manner or procedures prescribed by the Secretary, and in light of other practices which

have been deemed sufficient. To so decide, we interpret the statute and apply it to the unique facts of this case under the familiar standards applicable in summary judgment practice.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Cincom Sys., Inc. v. United States,* 37 Fed.Cl. 663, 670 (1997). In its consideration of motions for summary judgment, the Court resolves all reasonable inferences in the light most favorable to the nonmoving party. RCFC 56(c). Where, as here, both parties have moved for summary judgment, the Court evaluates each motion on its own merits. *See Kanehl v. United States,* 38 Fed.Cl. 89, 98 (1997) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Neither party disputes the core facts involved in this case. Based on the plain wording of the divorce decree—furnished to DFAS on multiple occasions, along with other correspondence which we shall examine in more detail—the Navy was aware of Plaintiff's legal claim to Mr. Holt's service benefits. These benefits include both his retired pay and his annuity. DFAS acknowledged Plaintiff's intention to enforce against her ex-husband the benefits detailed in the divorce decree. This being the case, the separate "written request" is not necessary to determine Plaintiff's intent, nor to put DFAS on notice. The separate "written request" thus becomes a formality without any functional purpose.

*(2.) The Bureaucratic Maze*

By her own admission, Plaintiff was not advised until it was too late that she had the right to act for her ex-husband, or that she was required to do so within one year. She did, however, notify the proper authorities that she was entitled by the divorce decree to Mr. Holt's survivor pension/retirement benefits.

According to Plaintiff, upon submitting the divorce decree and after some telephonic follow-up on her part, DFAS personnel informed her that she "had submitted everything necessary to ensure [her] receipt of the

SBP." Petition before BCNR (AR I at 4; 8); *see* Amended Compl. at ¶ 8. There is no factual rebuttal to this allegation, which as we noted earlier, is contained in some DFAS correspondence. The Government simply argues that even if accurate, the fact that a DFAS employee erroneously advised Mrs. Holt is of no moment, as "statements by Government employees that conflict with a statute cannot bind the Government." *See* Def. Reply to Pl. Suppl. Br. at 14 (arguing that equitable tolling cannot be applied to extend one-year deadline for deemed election); *accord Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *Iacono v. Office of Personnel Management,* 974 F.2d 1326, 1328 (Fed.Cir.1992). We have no reason to reach the question of equitable tolling or estoppel.

Yet we do find credible Mrs. Holt's characterization of the verbal assurances of the DFAS employee. As we suggested in the Background section of this Opinion, it is corroborated by the record. In fact, the only logical inference we can draw from Ms. Kitchen's memorandum concerning SBP entitlement is that Mrs. Holt had specifically requested that DFAS enforce those provisions of the divorce decree entitling her to Mr. Holt's SBP. Moreover, the fact that this DFAS paralegal "processed" the request—in the sense that she forwarded it to the appropriate official within the agency for action—supports Plaintiff's statement that she was informed she had done all that was necessary on her end.

Assuming some duty on the part of DFAS, Plaintiff's account of repeated inquiries of DFAS confirms a lack of effective assistance by government officials administering the military pensions of veterans. To this extent, Mrs. Holt's citation of the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"), while possibly a valid basis for relief elsewhere, does not invoke the jurisdiction of this Court. *New America Shipbuilders, Inc. v. United States,* 871 F.2d 1077, 1079 (Fed.Cir. 1989); *see* 28 U.S.C. § 1491 (1988) (Pursuant to the Tucker Act, the U.S. Court of Federal Claims possesses jurisdiction over claims for monetary damages but not those sounding in

tort such as a negligence claim under the FTCA).

As the Government correctly points out in its papers, we cannot simply rule on the equities in this matter. Nor can we apply estoppel under the circumstances, simply because DFAS officials may have made erroneous statements respecting statutory benefits. *See Perez v. United States,* 37 Fed.Cl. 764, 770, *aff'd* 156 F.3d 1366 (Fed.Cir.1998). For reasons we shall get to shortly, however, there is no reason to investigate the negligence of the agency personnel administering Mr. Holt's benefits. Though no model of efficiency, we believe that the handling of Mrs. Holt's claim was, in fact, effective in securing her entitlement to the SBP.

### (3.) *Judicial Treatment of the SBP*

Two other recent cases in this Court have addressed the situation in which Mrs. Holt finds herself. Neither of those cases—*Woll v. United States,* 41 Fed.Cl. 371 (1998) or *Pence v. United States,* 52 Fed.Cl. 643 (2002)—succeeds in making sense of the bureaucratic trap that permits the Military Services to become unwitting participants in a former service member's failure to live up to his or her financial and legal obligations. Those two cases, neither binding precedent, hold that the submission of the divorce decree, without more, fails to trigger statutory benefits. *Id.* Having perhaps more information about the deemed election process than was available to the authors of those opinions, we decline to adopt their reasoning.

In *Woll,* like the present case, the former spouse did everything in her power to make DFAS aware that her ex-husband was required by the judgment in their divorce proceeding to maintain survivor benefits for her. As with Mrs. Holt, the plaintiff sent in a copy of the divorce decree and was successful in convincing DFAS to make deductions for other obligations, such as alimony. But the entitlement to SBP, the Court found, required either express election or a deemed election for former spouse coverage. *Woll,* 41 Fed.Cl. at 375. While this is true, the question begging an answer is whether the divorce decree's demand for SBP status by the former spouse can suffice as a request to deem the husband's selection of the former spouse as beneficiary. The Court's disposition of this argument is instructive, but literal: Congress has determined the manner by which the military is to administer this annuity program, and the plaintiff failed to perfect her rights in the manner set forth by statute. *Id.* Clearly, one must meet the statutory requirements for there to be any entitlement. But we are not offered a discussion of possible alternative ways to satisfy those requirements.

The decision suggests that the statute sets forth the sole manner in which a former spouse perfects her rights. *Id.* ("Congress has determined the manner by which the Army is to administer this annuity program, and plaintiff failed to perfect her rights in the manner set forth by statute.") To attribute such precision to the statutory provisions is misleading. More precisely, the statute contemplates that the appropriate Secretarial authority—whether the Defense Secretary or the Secretary of the pertinent military service—will exercise discretion in implementing the deemed election. 10 U.S.C. § 1450(f)(3)(A)(i). Neither *Woll* nor *Pence* confronted the issue of what constitutes a "written request, *in such a manner as the Secretary shall prescribe*" when the pertinent regulations have not prescribed the appropriate manner. *Id.* (emphasis added).

As a result, these decisions offer little guidance other than the conclusion that the request must be more than just the submission of a divorce decree, and that the request must be submitted in the appropriate manner. *See Pence,* 52 Fed.Cl. at 648 ("By its plain wording, the written request and the court order are two different items; certainly, the statutory language implies that the latter itself does not incorporate the former."); *Woll,* 41 Fed.Cl. at 375 (rejecting argument that "all appropriate documents were submitted, but the information was on the 'wrong form.'") It defies logic that the Government may impose a "right form/wrong form" test when the Secretary has not acted to prescribe any form. Indeed, this legal theorem is further tortured when DFAS accepts a clearly "wrong form" in the guise of DD Form 1882 as a "right form."

*(4.) Satisfaction of "Written Request" Requirement*

As we noted at the first oral argument, at the time Mrs. Holt sought to establish herself as the SBP beneficiary, we were advised that the Secretary had not prescribed the "manner" of the written request. The only official guidance in existence at the time simply mirrored the statutory language. *See* Dept. of Defense Financial Management Regulation: Military Pay, Policy, and Procedures, Volume 7, Part B, DoD 7000.14–R §§ 90203 (Nov. 30, 1992) (Section on Election Data provides, "[o]n a deemed former spouse election, the Secretary concerned receives a written request, *in a manner prescribed by the Secretary*")(emphasis added). The pertinent provisions of the regulation, which appear in the DoD Military Retired Pay Manual, offer no further explanation of what constitutes a valid written request. *See generally* DoD Military Retired Pay Manual, Part Nine, Chapter 2, "Elections and Election Changes." And, of course, these provisions were not the statute's authoritative implementation by the Secretary. The very language of § 90203, for example, suggests that formal implementation was yet to come. There is, however, one aspect of this 1992 guidance which does prove helpful—the source of the written request—which we will explore further when we examine the two subsequent versions of this regulation.

Plaintiff contends that DFAS in fact accepted her submission of the divorce decree as satisfying the "deemed election" requirements. This becomes evident from the trail of correspondence between Mrs. Holt and paralegal specialist Arlene L. Kitchen. As we indicated earlier, Ms. Kitchen was one of the DFAS representatives assisting Mrs. Holt secure the various benefits described in her divorce decree during the crucial one-year period following the divorce. We examine her involvement in Plaintiff's claims more closely here.

First, Ms. Kitchen responded to the inquiries of Mr. Welch, the attorney handling Mrs. Holt's divorce. On August 9, Mr. Welch had requested on Mrs. Holt's behalf, a division of Mr. Holt's property pursuant to the Uniformed Services Former Spouses' Protection Act (USFSPA). On September 3, 1993, Ms. Kitchen responded to the request indicating that the Government could not honor the USFSPA claim in the absence of the requisite ten-year overlap of marriage and creditable military service. AR II at 57. Subsequently, Mrs. Holt spoke with Ms. Kitchen and on September 20, 1993, made the following request in a handwritten letter addressed to Ms. Kitchen:

> This is in reference to our telephone conversation of Friday, September 18, 1993.
>
> I hereby request that the *alimony* awarded me in the final judgment for divorce and the amended judgment ... be paid directly to me from the Defense Finance and Accounting Center rather than my having to await receiving it from Mr. Holt.

*Id.* at 58 (emphasis added). We will return to this request and the telephone conversation referenced within it. However, we must take one moment to digest what is meant by "alimony" in this context. An examination of the divorce decree reveals that the alimony to which she refers includes the following:

> [T]he court finds that the Wife is entitled to permanent periodic alimony in the amount of Two Hundred Dollars ($200.00) per month and shall be awarded an additional One Hundred Fifty Dollars ($150.00) per month for the purpose of obtaining medical insurance.

Divorce Decree, ¶ 9.

Of course, Mrs. Holt and her attorney sought to enforce other provisions of the divorce decree, as well. In particular, the record is replete with evidence that Plaintiff made timely demands to ensure payment of 14% of Mr. Holt's retirement pay. This entitlement is found in a paragraph separate from Paragraph 9, "Alimony." Paragraph 3 of the Divorce Decree, entitled "Military Retirement" provides:

> The parties agree that the Wife would be entitled to fourteen percent (14%) of the Husband's retirement. The Husband has agreed to, and shall maintain, a survivor's death benefit payment to protect the Wife's entitlement to said retirement.

*Id.* at ¶ 3. As this legal instrument recognizes, Mr. Holt's income was limited to his pension. *Id.* at ¶ 9. The source of all of Mrs. Holt's entitlements, therefore, is that very same military retirement. We conclude that Mrs. Holt's generalized request for alimony included more than just the dollar amounts specified in the court order. Rather by submitting this request and referencing the original and amended divorce decrees, Plaintiff intended to trigger her rights to a share of Mr. Holt's retired pay and the continuation of that pay after his death in the form of SBP payments.

Whatever Mrs. Holt meant by her letter, Ms. Kitchen appears to have been extremely responsive in assisting her. Based on the telephone conversation of September 18, Ms. Kitchen prepared three documents on October 13, 1993: two letters concerning Plaintiff's application for direct payment of alimony and a memorandum referring the SBP entitlement to another section of DFAS for approval. First, she wrote Mrs. Holt that her "application for the direct payment of alimony or child support from the account of [Mr. Holt] ... has been received by this office." She further indicated that "[i]t would appear that all the requirements under the [USFSPA] and the Regulations have been met." AR II at 59. There were a few more letters correcting the amount of monthly retired pay she was owed. *Id.* at 65, 66A–B. These recalculations are reflected in the correspondence as well as in internal agency documents captioned "retired Pay Former Spouse Worksheets," prepared during the latter half of October 1993 and bearing the initials of Ms. Kitchen. *See id.,* at 40, 61, 67.

Second, Ms. Kitchen sent out a notification to Mr. Holt concerning the deductions of alimony from his retirement pay. As required by law, Mr. Holt was given 30 days to contest the court order.

Finally, that same day and apparently also prompted by Mrs. Holt's September 18 telephone call, Ms. Kitchen followed through on the SBP aspect of alimony. The administrative record contains a document entitled "United States Government Memorandum," dated October 13, 1993, wherein Ms. Kitchen forwards the divorce decree to "ROA" cites Mr. Holt's retirement account by social security number, and writes:

> That portion of the enclosed Amended Final Judgment of Dissolution of Marriage concerning SBP entitlement is forwarded for your review and action as a matter under your cognizance.

*Id.* at 38.

Plaintiff's submission of the Court Order, her request for the "alimony" due her, and the contemporaneous memorandum of the paralegal constitute the required "written request" for SBP benefits.

This analysis is consistent with the admittedly informal manner in which this statute has been applied. See Def. Reply at 8 ("[T]he Secretary did not limit the type of form that a former spouse could use to make the written request.") In response to the Court's hypothetical queries, Government counsel conceded that even a handwritten note on the back of the divorce decree, itself, may satisfy what *Woll* and *Pence* insist is a two-part submission requirement. In fairness, Counsel suggested that "we're getting further and further in a grey area," yet he wholeheartedly agreed that a flexible approach is followed in this regard due to the fact that no particular form had been prescribed. Initial Oral Arg. (Dec. 11, 2003) Tr. at 18–22.

When it seemed that even the agency counsel could not say with certainty how the deemed election was required to be made, we ordered the Government to provide the Court with official guidance on the procedural requirements for former spouse elections, including any other regulations implementing the statute.

Thus it was that we were belatedly advised that the regulatory guidance in the Military Retired Pay Manual had been revised. The regulation has a 1995 version, but the pertinent provisions of the 1992 regulation were not changed. However, in 2000, the first time since the enactment of the SBP deemed election provision, the Secretary actually prescribed the manner in which a written request is received:

> [T]he member shall be deemed to have made such an election if the Secretary of

the military department concerned receives a written request from a former spouse or the former spouse's attorney on behalf of the former spouse. *The request is acceptable if it refers to or cites provisions in a court order concerning SBP former spouse coverage, or makes clear by other references to SBP that there is an intent that the annuity coverage be provided to the former spouse.* The written request must be accompanied by a copy of the pertinent court order or agreement referring to the SBP coverage.

DoD Financial Management Regulation DoD 7000.14–R, Military Pay, Policy, and Procedures, Volume 7B, Chap. 43 § 430503(C) (Oct.2000) (emphasis added). Obviously, this provision cannot be applied to Mrs. Holt's situation since it post-dates her circumstances. The Secretary had not implemented these specific procedures at the time pertinent to this case. But even if it were applied in Mrs. Holt's case, the DFAS paralegal's memorandum clearly satisfies even these vague requirements.

As a practical matter the Kitchen memorandum is *"from* the former spouse" as required by the regulations. Although Ms. Kitchen was a conduit for the request, there is nothing in the statute or regulation which prohibits this practice. In fact, during the second oral argument in this case, Government counsel conceded that in the absence of the Secretary specifying otherwise, the source of the deemed election could be a third party. The statute merely provides that the SBP participant shall be deemed to have made an election "if the Secretary concerned receives ... [r]equest from former spouse." This language—repeated almost verbatim in the 1992 regulation—is intended not to specify the *manner* of the request, but rather to distinguish the deemed election from an election directly by the SBP participant on the former spouse's behalf. Nowhere in the 1992 regulatory provisions governing deemed elections is there a directive requiring a formal document executed by the former spouse. *See generally,* DoD 7000.14–R § 90203 ("Election Data") and § 90205 ("Election Coverage"). Only the 2000 version of the regulation—the long-awaited guidance on the proper form "written re-

quests" should take—appears to limit the source of the written request, and only insofar as it specifies that the appropriate Military Department could receive the written request from the former spouse or from an attorney on behalf of that person. The addition of the phrase "the former spouse's attorney on behalf of the former spouse" is susceptible of the interpretation that no other "next friend" could make the request on behalf of the former spouse. *See* DoD 7000.14–R, Military Pay, Policy, and Procedures, Volume 7B, Chap. 43 § 430503(C).

The Government argues that the Secretary exercised his discretion by intentionally declining to designate a particular form for former spouses to file. In its supplemental brief, Defendant goes on to suggest that the Secretary did so for the benefit of the former spouse, in order to allow "more freedom in how to make the written request." Def. Reply at 8. If this is indeed the explanation for the Secretary's prior inaction, we hold the Government to its interpretation.

We think it obvious that the Secretary's authority to prescribe "the manner" of the written request is limited at most only by his reasonable discretion. Prior to 2000 the Secretary could, for example, accept an email, which is not a "writing" in the conventional sense. Similarly, the Secretary could accept a cell phone text message, a tape recording, a third party request, or any other explicit or implicit expression of desire from or on behalf of a former spouse. In the absence of any limiting "manner" issued by the Secretary, all these and other reasonable "manners" would suffice as a "written request."

Plaintiff was ultimately furnished a DD Form 1882, entitled Survivor Benefit Election Change, a form clearly intended for use by the retiree for an affirmative voluntary election. Nowhere on the form do the words "deemed election" appear. Nor is there any citation on the face of the form to the statutory authority for the deemed election. Nor would we expect there to be any such authority—DD Form 1882 was included with the first regulatory implementation of the 1972 SBP, long before the statute was amended to permit former spouse or deemed elections.

*See* Dept. of Defense Directive 1332.27, (Jan. 4, 1974) at Enclosure 1, Attachment 2. In filling out the form for a deemed election submission a former spouse had to know to cross out "retiree," and to insert the words "former spouse" in the signature block. AR I at 31. This was the Department of Defense's "right form" answer to implementing a statutory directive intended to assist former spouses.

Since DFAS was prepared to accept such a perverse document as a deemed election "written request," Mrs. Holt was not bound by any particular form or procedure when making her deemed election. Under the flexibility rationale proposed by the Government, it is inconceivable that DFAS would reject the written request that a DFAS paralegal submitted on Plaintiff's behalf, and there is no indication that it was rejected. The request made by Arlene Kitchen on Mrs. Holt's behalf is simple and to the point. It is a "written request," accompanying the court order, and it highlights the fact that the court document concerns SBP entitlement. AR II at 38. It is written on generic letterhead captioned "United States Government: Memorandum." Preprinted on the document is the following: "Optional Form No. 10 (Rev. 1–80) GSA FPMR (41 CFR) 101–11.6, 5010–113." This "form" is certainly better suited to the request than the DD Form 1882, which had to be rewritten from its intended purpose by the retiree. It is also far more helpful, we think, than if the words "I want to be maintained as SBP beneficiary" had been scrawled on the back of the divorce decree, a form of "written request" that the Government apparently now agrees would be satisfactory. *See* Def. Response to Court Order (Jan. 16, 2004) ("Because the Secretary has not exercised his discretion to restrict former spouses to a single official form, the Secretary implicitly *permits the use of any type of written document* in which the former spouse requests a deemed election to have been made.") (emphasis added). At a minimum, Ms. Kitchen's memorandum concerning Mrs. Holt's SBP status is more than the claimants provided in either the *Pence* or the *Woll* case.

### (5.) *Statutory Construction Issues*

Plaintiff's supplemental brief addresses the statutory requirements in the context of whether or not the deemed election provisions of the SBP were self-executing. Since the statute called for a written request "in such a manner as the Secretary shall prescribe," argues Plaintiff, the statutory requirement is not enforceable until the Secretary promulgates regulations prescribing the form that a written request would take. Pl. Suppl. Br. at 5–6. In support of this argument, Plaintiff cited the slightly different but not altogether distinguishable case of punitive provisions relating to bank reporting requirements. *See Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 64, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) (Statute authorizing Secretary of Treasury to impose reporting requirements was not self-executing; no penalties could be imposed were the Secretary to take no action under his authority.)

Counsel urges that the non-self-executing principle enunciated by the Supreme Court in *Cal. Bankers* holds true for an entitlement scheme such as the SBP deemed election, to the same extent that it applies to the regulatory duties of the banking industry. According to Plaintiff, it necessarily follows that since the Secretary failed to provide specific guidance implementing the "written request" provision until almost seven years after Mrs. Holt's request, only the divorce decree was required in order to perfect a deemed former spouse election.

Since we have concluded that Mrs. Holt satisfied the "written request" element, we need not reach the question of whether the divorce decree alone would satisfy the statutory provisions of the SBP under this theory. Nor do we need to consider whether the statute was self-executing.

But were we not given those facts, it is a question that we might well answer differently from the holdings in *Woll* or *Pence*. The Government's own authority on the SBP, what little of it there is, belies the highly formalized approach employed in those decisions. Under the SBP, the statutory entitlement to deemed beneficiary status is by definition intended to enforce the legal obligations of the retiree or pension-

holder, without regard to the specific elections he may have made. Indeed, the various service Correction Boards have overlooked the one-year window and enforced defective deemed elections based on equitable grounds. *See* Letter of W. Dean Pfeifer, BCMR to Sen. Jon Kyl (Jul. 18, 2000) (stating exception to policy regarding review of former spouse applications in "rather narrow range of cases ... where it was clear that both the former spouse and the deceased servicemember clearly intended that the former spouse would be covered by SBP and where, because the deceased servicemember had not remarried, there was no competing claim of coverage by a subsequent spouse.") Were it not for the fact that Mr. Holt's surviving dependent became a beneficiary upon his death, Plaintiff's claim may have also been favorably received by the Board.

Contrary to the rationale of *Woll* or *Pence,* there was at the time in question, no magic language required nor specific procedures involved in making a deemed election. Only a statute promising procedures to be established at a later date. Defendant has quoted from *Mass. v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989): "[i]n expounding a statute, we [must] not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." Def. Resp. to Court Order at 3 (internal citations omitted). We strongly concur with the principle as it pertains to Mrs. Holt's case. The official regulations have been so loosely conceived as to permit "any request in writing from the former spouse that states the intent to enforce a former spouse SBP award in an accompanying court order." Def. Resp. to Court Order at 12. A notation in handwriting in the margin of the divorce decree could suffice. Since the "written request" stands as a requirement without purpose, an expansive interpretation remains true to legislative intent.

### CONCLUSION

Having found that Mrs. Holt satisfied the statutory requirements for obtaining the benefits she claims, we conclude that she is entitled to judgment as a matter of law.

Accordingly, **the Defendant's motion to dismiss and its motion for judgment on the administrative record are DENIED and Plaintiff's cross motion for summary judgment is GRANTED.**

Because the BCNR declined to even consider Mrs. Holt's petition on jurisdictional grounds, Plaintiff has never had the merits of this case heard by an adjudicative body before filing her Complaint in this Court. We have considered the merits of this case, presented with a record replete with documents that speak for themselves. **Based upon that record and the Plaintiff's undisputed allegations, we grant at least a portion of the requested relief. Based on our conclusion that Plaintiff has complied in a timely manner with the statutory prerequisites for her consideration as a deemed beneficiary, she is entitled to back SBP payments from the date of Mr. Holt's death on December 27, 1994, to the date of this judgment.**

Plaintiff also requests that we order future monthly SBP payments be paid to her, and that we correct Mr. Holt's military records in order to designate her as Mr. Holt's SBP beneficiary. There is some question whether we have the power to provide this relief directly. *See Quinton v. United States,* 64 Fed.Cl. 118, 130, 2005 WL 318675 (2005) (implementing correction of military records remedy rather than remanding for BCMR to do so). However, the Government proposed that were we to find Plaintiff is entitled to these benefits, the Court could direct the Navy, or its financial management arm, DFAS, to adopt a remedy consistent with this decision. The Government maintained that the proper remedy would entail the Court remanding the matter to the BCNR, and order the Board to correct Mr. Holt's military records to indicate that a deemed election was, in fact, properly made.

**Accordingly, we hereby remand the case to the Navy in order to correct Mr. Holt's records to reflect that Plaintiff satisfied the requirements for a deemed former spouse election under the SBP. Furthermore, we direct the Navy to ensure that**

DFAS calculates the back payments to which Plaintiff is entitled.

IT IS SO ORDERED.